## S. DEUIL *v.* B. A. MARTEL et al.

The prolongation of the term of payment of a note, made without the consent of the surety, discharges his liability.

The consent of the surety will not be inferred from his declaration that he would agree to any arrangement made for him by the principal debtor, in the absence of proof that the principal professed to act also as agent of the surety in making the new terms.

APPEAL from the District Court of St. Landry.

T. H. *Lewis* and *Porter,* for plaintiff. *King & Martel,* for defendants and appellants.

VOORHIES, J. On the 13th January, 1842, *Luke Hollier* sold to B. A. *Martel,* one of the defendants, by notarial act, his claim to certain buildings and improvements. For the price, the purchaser and his co-defendant, Widow *Martel,* signed, *in solido,* three promissory notes, payable to the order of the vendor, *Luke Hollier,* one for $300, on the 1st of May, 1842; one for $250, on the 1st of May, 1843; and one for $250, on the 1st of May, 1844; all of which conditioned to bear 10 per cent. interest from the 1st of May, 1842. To secure the payment of these notes, as surety *in solido,* Widow *Martel* made herself a party to the act of sale, and mortgaged in favor of the vendor, as her property, a lot of ground situated in the town of Opelousas.

This suit is brought by the plaintiff for the recovery of the balance alleged to be due him on the first and last mentioned of these notes, and for the recognition of his right of mortgage.

Widow *Martel* claims her release as surety on the ground that the plaintiff has granted to *B. A. Martel,* the principal debtor, a prolongation of the term. The

question, then, presented, is a question of fact. The following agreement is endorsed on both notes sued upon, viz :

"Received on the within note fifteen dollars. It is agreed that this note is to be paid in three equal payments, to wit, one, two and three years from this date, and to draw 8 per cent. interest from this date, instead of 10 per cent.— this 8th June, 1849.                                             STEPHEN DEUIL,

B. A. MARTEL."

This is clearly a prolongation of the term, and unless shown to have been granted by the plaintiff to *B. A. Martel*, the principal debter, with the consent of Widow *Martel*, the surety, it is obvious that the latter must be considered as released. To meet this objection, the plaintiff relies on his own answers to interrogatories propounded to him by the defendants on facts and articles, in which he gives the declarations of Widow *Martel* in a conversation with her.

In answer to the interrogatory : " Did you not grant said extension without the knowledge or consent of Widow *Emelie B. B. Martel?*" he says : " The time that the arrangement was made, the extension given that is specified on the notes, I think that the Widow *Emilie B. B. Martel* was not present, but previous to that, when her son was in France, I called on her (the Widow *B. B. Martel*) to see if she could arrange the debt in some way. She told me that she could not, but that her son, *B. A. Martel*, done her business ; that she expected when he returned he would arrange it ; that any arrangement that her son, *B. A. Martel*, made, she would agree to."

To the interrogatorry, " Did you ever make any arrangement relative to said notes in which the said *Emelie* was consulted ?" the answer is : " I consulted her, and she gave me to understand that any arrangement that her son, *B. A. Martel*, made, would be satisfactory."

From this, it is urged, that the consent of the Widow *Martel* may be inferred. To destroy or weaken the effect of these answers, the defendants introduced in evidence the former answers of the plaintiff to the same interrogatories taken under commission, and which, it appears, had been rejected for informality.

The first answer is : " I do not know whether she had any knowledge of it or not." And to the second : " I called on her, while her son was in France, to pay these notes. She said she could not pay them, but I must arrange it with her son, *B. A. Martel*, when he returned from France."

These answers appear to have been given upwards of a year previous to the other answers. We are not informed by the record when this conversation took place between the plaintiff and the Widow *Martel*, nor when *B. A. Martel* was in France. Neither is it shown what was the nature of the arrangement proposed, or that *B. A. Martel* ever pretended to act as the agent of his mother in making the agreement evidenced on the back of the notes sued upon. We do not think the consent of Widow *Martel* to the alleged prolongation of the term can be deduced from her declarations to plaintiff.

Since this appeal was taken, it appears that a written agreement has been entered into between the plaintiff and the defendant, *B. A. Martel*, whereby the former has acknowledged the receipt of $421 70 on account of the judgment rendered in his favor in this case, and for the balance due him thereon has consented to suspend its execution, etc. This agreement has been filed by consent of both parties, and we consider it as amounting to an abandonment of the appeal.

It is therefore ordered and decreed, that the judgment of the District Court, so far as it relates to the appellant, Widow *Emelie B. B. Martel,* be avoided and reversed, and that she be released from all liability as surety or otherwise on the notes sued upon, the appellee to pay the costs of both courts ; and, as to the other defendant, *B. A. Martel,* it is ordered that his appeal be dismissed, at his costs.